SEBRING, Justice.
On April 10, 1953, Isaac Watkins personally drafted his last will and testament, in longhand, designating one Favel Crawford, a minor, as his sole beneficiary. Charles Van Clear and Russell Platt were present while the will was being written. After the will had been drafted Watkins explained to Clear and Platt the* nature of the written paper and signed the same in their, presence. At Watkins’ request Clear affixed his signature to the will as a witness but Platt refused to do so.
Watkins died on June 26, 1953. Shortly thereafter the father of Favel Crawford offered the will for probate. The county judge refused to admit the will to probate on the ground that the will was not executed in conformance with the requirements of the law. On appeal the Circuit Court for Columbia County affirmed the ruling of the county judge and this appeal followed.
The question for determination is whether or not, under the 1933 Probate Act, F.S. A. § 731.01 et seq., a will is valid which is executed by the testator in the presence of two witnesses who see him place his signature thereon and to whom he declares the paper to be his last will and testament, when only one of the witnesses subscribes his name to the will.
Prior to the enactment of the Probate Act of 1933 the statute relating to the execution of wills dealing with real estate provided, as follows:
“Every last will and testament disposing of real estate shall be signed by the testator * • * * and shall be attested and subscribed in the presence of the said testator by two or more witnesses, or else it shall be utterly void and of non-effect.” Section 5460, C.G. L.1927. (Emphasis supplied.)
As to wills dealing with personal property the controlling statutes provided:
“All wills of personal property shall be in writing, and signed by the testator * * *.” Section 5462, C.G.L. 1927.
The Probate Act of 1933 abolished the distinction formerly existing between the execution of wills involving real estate and personal property and instead provided:
“Every will, other than a nuncupa-tive will, must be in writing and must be executed as follows: (1) The testator must sign his will at the end *196 thereof * * *. (2) The testator, in the presence of at least two attesting witnesses present- at the same time,' must sign his will * * * as aforesaid * * See section 731.07, Florida Statutes 1951, F.S.A.
It is the" Contention of the appellant'that inasmuch as the statute prior to 1933 provided that wills disposing of real property should be “attested and subscribed * * * by two or more witnesses” while the 1933 Probate Act provides only that the testator “must sign his will * * * in the presence of at least two attesting witnesses” the subscription of a will by witnesses is no longer necessary to its validity.
It must be conceded that some general authority may be found for the contention that there isi at distinction between the words “attest” and “subscribe,” that attestation is a mental process involving the use of the senses, whereas subscription' is a physical act involving the use of the hands. Moore v. Walton, 158 Ga. 408, 123 S.E. 812; Hill v. Davis, 64 Okl. 253, 167 P. 465, L.R.A.1918B, 687; Tobin v. Haack, 79 Minn. 101, 81 N.W, 758; Swift v. Wiley, 1 B.Mon. 114, 40 Ky. 114. However, it appears from < an examination of the cases that the distinction in most instances relates to the issue of whether a subscribing witness in a particular situation was in fact an attesting witness, the latter requirement encompassing more than the mere act of subscription. In those jurisdictions which have statutes similar to our wills statute, it is held that the phrase “attesting witnesses” is much broader in scope, and" includes not only the mental process of witnessing the execution of the instrument by the maker, but also the physical act of subscribing to the instrument as witness to the fact of its execution. International Trust Co. v. Anthony, 45 Colo. 474, 101 P. 781, 22 L.R.A.,N.S., 1002; Drury v. Connell, 177 Ill. 43, 52 N.E. 368; Calkins v. Calkins, 216 Ill. 458, 75 N.E. 182, 1 L.R.A.,N.S., 393.
We have the’view that when the legislature -adopted the Probate Act of 1933 it used the term “attesting witnesses’’ in the broader, and not the narrower, sense. As evidence of this intent the legislature provided, in section 732.24, Florida Statutes 1951, F.S.A., for example,’that when it has been made "to appear to a court wherein a will has been offered for probate “that the attesting witnesses have gone to parts unknown or are dead or have after its execution become incompetent or their testimony cannot be obtained within a reasonable time, [the will] may be admitted to probate upon the oath * * * of the executor.” Plainly, this provision of the statute contemplates a subscription by the attesting witnesses, for without such signatures it would be impossible for the probate judge, in every case, to determine who had been witnesses to the execution of the will and, after such determination, whether or not subscribing witnesses were dead or incompetent or had gone to -parts unknown. Section 732.25, Florida Statutes 1951, F.S.A-, provides that “If any will is produced for probate and any witness attesting the same cannot without inconvenience appear before the county judge, the county judge may issue a commission * * * directed to any person who, by the laws of the state or country where such witness may be found, is authorized to administer an oath, empowering him to take proof of the attestation of such witness.” (Emphasis supplied.) Here again the intent seems plain that an attesting witness to a will must be a subscribing witness, for if the name of the witness could not be ascertained from an inspection of the will, the county judge would be unable to determine whether or not, in given c^ses, such proofs should be taken by a person empowered by the county judge to administer oaths and take proofs of such witness. Section 731.07(5), Florida Statutes 1951, F.S.A., provides, in respect to those who may take under a will, that “all devises and bequests to subscribing witnesses are void unless there are at least, two other disinterested subscribing witnesses .to the will.” It would seem to be unquestionable that in this section the legislature, intended the word “subscribe” to be synonomous with the word .“attest” — that the words were to be used interchangeably. And *197 from this it would seem to follow that the legislature intended that “attesting witnesses” should be something more than witnesses who simply saw the' execution of the instrument by the testator, and were to be persons who also subscribed their names to the instrument as witnesses to the fact of execution by the testator. For under any other construction a person-witnessing the execution of a last will and testament in a particular case may be deprived of a gift of real property, merely because, at the request of the testator, he has subscribed to the instrument, while a companion witness to the execution of the same instrument will be allowed to take thereunder merely because he has withheld his signature. We cannot ascribe to-the legislature an intention to produce a situation that could bring about any such ridiculous result.
An examination of other Florida statutes that do not pertain to wills but that do have to do with attestations generally lends further support to the conclusion that the words were intended to be used in the broader sense and include the notion Of subscription. In section 831.01, Florida Statutes 1951, F.S.A., for example, it is provided, in effect, that whoever falsely makes, alters, forges or counterfeits an attestation of any public officer, in relation to a matter wherein such attestation may be received as legal proof, with intent to injure or defraud any. person, shall be guilty of the crime of forgery. And section 831.02 provides, in effect, that whoever utters and publishes as true a false, forged or altered writing mentioned in the foregoing section, knowing the same to be false, altered, forged or counterfeited, with intent to injure or defraud any person, shall be guilty of uttering a forgery. For other statutes reflecting a legislative intent that “attestation” shall include “subscription,” see sections 92.10, 136.06, 194.55(3), 194.56, 199.25, 562.39(1), 610.17, 922.12, 922.15, Florida Statutes 1951, F.S.A.
The word “attested” has long been used in connection with the execution of documents conveying interests in property by a living person as contemplating the requirement of subscription' by witnesses. Cross v. Robinson Point Lumber Co., 55 Fla. 374, 46 So. 6; Bruner v. Hart, 59 Fla. 171, 51 So. 593; Logwood v. Hussey, 60 Ala. 417; Shaw v. Smith, 150 Mass. 166, 22 N.E. 887, 6 L.R.A. 348. It is impossible to believe that, in the face of this long-standing.usage in connection with a rule of property, the legislature, in referring to “attesting witnesses” in connection with the transfer of property interests by a person since demised, intended to relax the requirement without using explicit language disclosing its plain intent to do so. Certainly, such a radical departure from tradition and custom will not be implied in the absence from the statute of words compelling such a conclusion. It will not be presumed that the legislature intended to create a condition that would lend itself so readily to fraud and imposition. As the matter is summed up in International Trust Co. v. Anthony, supra [45 Colo. 474, 101 P. 782]:
“If. * * * the word 'attestation’ carries with it the notion and requirement of subscription, when used in reference to the- execution and authentication of such matters as have been hereinabove referred to, it is not readily apparent why that meaning should, as by ihagic, disappear when used in connection with the attestation of wills and codicils thereto. Indeed, we think that such is. not" in fact the case, for it seems clear- that the same reasons which make manifest the'necessity and demand for .subscription in connection with the documents to which allusion is made above, would naturally indicate even stronger and more powerful reasons for a like demand and need in the attestation of wills.”
We conclude therefore .that in framing the present wills statute the legislature intended that an “attesting witness” to a will should be someone present at the request of the,testator for the purpose of seeing that the will is executed by a legally competent testator as-his free act and deed, and that such person must subscribe his own name to the instrument as testimony *198 of - the fact that all legal steps necessary to make the will a legal instrument have been taken by the testator. Page on Wills, perm, ed., Vol. 1, Sec. 307, p. 574.
The decree appealed from should be affirmed.
It is so ordered.
ROBERTS, C. J., and TERRELL and MATHEWS, JJ„ concur.